FILED
July 22, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: CR
Deputy

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

**UNITED STATES OF AMERICA**

**Plaintiff**

**v**

**(1) KARINA GARCIA**
**aka Tia Concho, Rutilla Casillas, La Gorda, La Morana, Rutila,**
**(2) SEFERINO HUERTA-CASILLAS**
**aka Cheche Migo, Cheche, Che Che, Passing, Barbon, Jose Del Rio, Jose Acunã,**
**(3) EDSON ALEJANDRO PEREZ**
**aka Chino, Chino Cristian Garcia, Pelos Feos, Chinito,**
**(4) MAYRA ALEJANDRA HUERTA**
**aka Mayra Guerrero, Mayra Salvidar,**
**(5) JONAS ULLOA-AGUILERA**
**aka Don Marcial P, Jonas F, Jonas Nuevo, Jonas, El Flaco,**
**(6) MARIA NORMA NERI DE MORAN**
**aka Norma,**
**(7) DAMIAN HUERTA ANALUCAS**
**aka Damian Huerta, Damian Analucas,**
**(8) PASCUAL RAYMUNDO LOARCA**
**(9) ERIC HERNANDEZ**
**aka Erico,**
**(10) ROSARIO CRISTAL LOPEZ-SALDANA**
**aka Cristal Zacatecas, Cristal Rosario Lopez-Saldana,**
**(11) FRANKLIN WILLIAMS AYALA AGUILERA**
**aka FDLH, Franklin, Franklin Williams Ulloa Aguilera,**

**Defendants.**

**CASE NO:** DR:26-CR-02066-AM

**INDICTMENT**

**COUNT 1:** 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I) & (a)(1)(B)(iv): Conspiracy to Transport Illegal Aliens Resulting in Death

**COUNT 2:** 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I)(II) & (a)(1)(B)(iv): Aiding and Abetting Transport of Illegal Aliens Resulting in Death

**THE GRAND JURY CHARGES:**

**Introduction**

1. From at least April 2023 through May 12, 2026, the defendants, **KARINA GARCIA,**

**SEFERINO HUERTA-CASILLAS, EDSON ALEJANDRO PEREZ, MAYRA ALEJANDRA HUERTA, JONAS ULLOA-AGUILERA, MARIA NORMA NERI DE MORAN, DAMIAN HUERTA ANALUCAS, PASCUAL RAYMUNDO LOARCA, ERIC HERNANDEZ, ROSARIO CRISTAL LOPEZ-SALDANA, FRANKLIN WILLIAMS AYALA AGUILERA,** and others (collectively "smugglers"), participated in a human smuggling organization which illegally utilized the train system to smuggle migrants (collectively "aliens") further into the United States after illegally crossing them from Mexico. The aliens were not U.S. citizens and did not have prior official authorization from the U.S. government to come to, enter, and reside in the United States.

2. Each alien, or their families and friends, paid money, generally the equivalent of $1,500-$10,000, to individuals in Honduras, Mexico, the United States, and elsewhere, to be transported illegally into the interior of the United States.

3. The organization was comprised of multiple smugglers, who worked in concert with other groups of smugglers to accomplish their goals. This included coordinating and utilizing each other's routes, guides, stash houses, and drivers. The smugglers would use these methods to assist aliens on their journeys from Mexico and Honduras into the United States. Once smuggled into the United States, aliens were often housed at stash houses or hidden in the brush along the Rio Grande River in Del Rio, Texas. Next, the organization generally would load aliens into shipping containers, which were located on trains in Del Rio. By loading the aliens into the shipping containers on the trains, it allowed the aliens to advance into the interior of the United States.




The Union Pacific Railyard in Laredo, Texas depicting stacked Conex shipping containers.

4. The Union Pacific Railroad system is a freight rail network in the United States that operates thousands of miles of tracks across several states, including Texas. Relevant here, the railroad system has train tracks that run between Del Rio and San Antonio, generally parallel to Highway 90. Union Pacific trains often stretch for miles and are comprised of a series of boxcars, some of which are unventilated Conex shipping containers. The Conex shipping containers are often stacked on top of each other. This human smuggling organization utilized the train system to conceal aliens so that they could bypass the United States Border Patrol Checkpoints on Highway 90 between Del Rio and San Antonio.




Map depicting US-90 and the Union Pacific Railroad system between Del Rio to San Antonio.

5. Once a train made it beyond the checkpoint, smugglers would unload the aliens near or in San Antonio. On many of these trips, smugglers drove alongside the train, sometimes communicating with the aliens locked inside the shipping containers. This communication allowed the smugglers to know where to unload the aliens once the train was near San Antonio. After unloading the aliens from the shipping containers, smugglers would then transport the aliens to their final destinations in the United States.

6. Towards the end of April 2026, the organization began to facilitate the smuggling of at least seven aliens from Acuña, Mexico into Del Rio.

7. On or about May 9, 2026, after the smugglers illegally crossed the seven aliens from Mexico into the Del Rio area, the organization transported the aliens to an area near the Union Pacific train tracks in Del Rio.

8. From approximately 1:18 p.m. to 1:25 p.m., while a Union Pacific train was stationary, smugglers, using red bolt cutters, cut the lock off a Conex shipping container's door, loaded the aliens into the container, and then shut the door.



Red bolt cutters used to open the Conex shipping container's door.



Photo depicting broken seal from the Conex shipping container's door.

9. The shipping container was stacked on top of another Conex shipping container. It had no ventilation or cooling system. The recorded outside temperatures for that day ranged from 88 to 92 degrees Fahrenheit.

10. In total, seven aliens were loaded into the container, including one child. It was secured from the outside and could not be opened from the inside.

11. The train then departed Del Rio and traveled east along Highway 90 to San Antonio.

12. The Conex shipping container was full of cardboard boxes. The aliens were forced to sit on

top of the boxes, in a small space, near the end of the container, unable to touch the floor. As the temperature inside the Conex shipping container rose, the aliens panicked. They sweated profusely and gasped for air. At least one alien messaged a loved one, pleading for help.



Photo depicting outside of a locked Conex shipping container.

13. Once the train arrived in San Antonio, smugglers opened the door to the Conex container and discovered the aliens in peril. Smugglers fled the scene, leaving one of the aliens near the railroad tracks—deceased and discarded. Smugglers left the remaining aliens in the shipping container. The next day, the train departed and headed south along its route to Laredo.

14. On May 10, 2026, a worker at the Union Pacific Rail Yard in Laredo saw a leg sticking out from a Conex shipping container. Upon inspection, six aliens were discovered deceased in the shipping container. Laredo law enforcement contacted San Antonio agents for assistance. Later, San Antonio law enforcement discovered a seventh alien deceased near the railroad tracks in San Antonio.

15. Ultimately, seven aliens died from being in the Conex shipping container—four were Mexican nationals and three were Honduran nationals, one a fourteen-year-old child.

**COUNT ONE**
**[8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I) & (a)(1)(B)(iv)]**

Paragraphs 1 through 15 of this Indictment are realleged and incorporated as though fully set forth herein.

Beginning in at least April 2023, and continuing through on or about May 12, 2026, in the Western District of Texas, Southern District of Texas, and elsewhere, Defendants,

**(1) KARINA GARCIA aka Tia Concho, Rutilla Casillas, La Gorda, La Morana, Rutila,**
**(2) SEFERINO HUERTA-CASILLAS aka Cheche Migo, Cheche, Che Che, Passing, Barbon, Jose Del Rio, Jose Acunã,**
**(3) EDSON ALEJANDRO PEREZ aka Chino, Chino Cristian Garcia, Pelos Feos, Chinito,**
**(4) MAYRA ALEJANDRA HUERTA aka Mayra Guerrero, Mayra Salvidar,**
**(5) JONAS ULLOA-AGUILERA aka Don Marcial P, Jonas F, Jonas Nuevo, Jonas, El Flaco,**
**(6) MARIA NORMA NERI DE MORAN aka Norma,**
**(7) DAMIAN HUERTA ANALUCAS aka Damian Huerta, Damian Analucas,**
**(8) PASCUAL RAYMUNDO LOARCA,**
**(9) ERIC HERNANDEZ aka Erico,**
**(10) ROSARIO CRISTAL LOPEZ-SALDANA aka Cristal Zacatecas, Cristal Rosario Lopez-Saldana,**
**(11) FRANKLIN WILLIAMS AYALA AGUILERA, aka FDLH, Franklin, Franklin Williams Ulloa Aguilera,**

and others, knowing and in reckless disregard of the fact that aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other, to transport, move, and attempt to transport and move, said aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, and the offense resulted in the death of at least one person, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), and (a)(1)(B)(iv).

**COUNT TWO**
**[8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II) & (a)(1)(B)(iv)]**

Paragraphs 1 through 15 of this Indictment are realleged and incorporated as though full set forth herein.

Beginning in April 2023, and continuing through on or about May 12, 2026, in the Western District of Texas, Southern District of Texas, and elsewhere, Defendants,

**(1) KARINA GARCIA aka Tia Concho, Rutilla Casillas, La Gorda, La Morana, Rutila,
(2) SEFERINO HUERTA-CASILLAS aka Cheche Migo, Cheche, Che Che, Passing, Barbon, Jose Del Rio, Jose Acunã,
(3) EDSON ALEJANDRO PEREZ aka Chino, Chino Cristian Garcia, Pelos Feos, Chinito,
(4) MAYRA ALEJANDRA HUERTA aka Mayra Guerrero, Mayra Salvidar,
(5) JONAS ULLOA-AGUILERA aka Don Marcial P, Jonas F, Jonas Nuevo, Jonas, El Flaco,
(6) MARIA NORMA NERI DE MORAN aka Norma,
(7) DAMIAN HUERTA ANALUCAS aka Damian Huerta, Damian Analucas,
(8) PASCUAL RAYMUNDO LOARCA,
(9) ERIC HERNANDEZ aka Erico,
(10) ROSARIO CRISTAL LOPEZ-SALDANA aka Cristal Zacatecas, Cristal Rosario Lopez-Saldana,
(11) FRANKLIN WILLIAMS AYALA AGUILERA, aka FDLH, Franklin, Franklin Williams Ulloa Aguilera,**

and others, aided and abetted by each other, knowing and in reckless disregard of the fact that aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally transport and move, said aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, and the offense resulted in the death of at least one person, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I)(II), and (a)(1)(B)(iv).

**NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE**
**[*See* FED. R. CRIM. P. 32.2]**

**I.**
**Immigration Violations and Forfeiture Statute**
**[Title 8 U.S.C. §§ 1324 (a)(1)(A)(ii), (a)(1)(A)(v)(I)/(II), and (a)(1)(B)(iv), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(6)(A)]**

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of property, including any items listed below, upon conviction and as a part of sentence pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 982(a)(6)(A) which states the following:

**Title 18 U.S.C. § 982 Criminal forfeiture**
**(a)(6)(A)** The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate, section 274(a) . . . of the Immigration and Nationality Act . . . shall order that the person forfeit to the United States, regardless of any provision of State law—
**(i)** any conveyance, including any vessel, vehicle, or aircraft used in the commission

of the offense of which the person is convicted; and

**(ii)** any property real or personal—

**(I)** that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or

**(II)** that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

This Notice of Demand for Forfeiture includes but is not limited to the following.

## II.
## Personal Property

SEFERINO HUERTA-CASILLAS (3) and MAYRA ALEJANDRA HUERTA (5)

1. $53,000.00, More or Less, in United States Currency;
2. Glock 19X, Serial Number BHWU607;
3. Smith and Wesson, MP Shield 9mm Pistol, Serial Number: HKP2001;
4. FN Pistol 9mm, Serial Number: CV026215;
5. Ford F-250 bearing Texas License Plate: VGF1898; and
6. Any and all firearms, ammunition, and/or accessories involved in or used in the commission of the criminal offense.

KARINA GARCIA (1)

1. 2015 GMC Yukon Texas License Plate: XGN7827.

## III.
## Real Property

MAYRA ALEJANDRA HUERTA (5)

Real property located and situated at **6531 VEGA VERDE RD, DEL RIO TX 78840**, with all building, appurtenances, and improvements thereon including surface and subsurface rights, if any, and more fully described as:

BEING ALL OF LOT FOURTEEN (14), IN BLOCK "E" OF THE VEGA VERDE ESTATES ADDITION NEAR THE CITY OF DEL RIO, TEXAS, ACCORDING TO THE MAP OR PLAT OR RECORD IN VOL. 4, PAGE 24, MAP RECORDS OF VAL VERDE COUNTY, TEXAS.

## IV.
## Money Judgment

**Money Judgment:** A sum of money equal to the value of the proceeds obtained, directly or indirectly and/or equal to the value of the property used or intended to be used to facilitate the violations described above for which each Defendant is solely liable.

## V.
## Substitute Property

If any proceeds from the violation, as a result of any act or omission of the Defendants—

**(A)** cannot be located upon the exercise of due diligence;
**(B)** has been transferred or sold to, or deposited with, a third party;
**(C)** has been placed beyond the jurisdiction of the court;
**(D)** has been substantially diminished in value; or
**(E)** has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property of the Defendants, up to the value of each money judgment, as substitute property pursuant to Title 21 U.S.C. § 853(p) and FED. R. CRIM. P. 32.2(e).

A TRUE BILL

[redacted]

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

BY: ______________________________
TODD KEAGLE
Assistant United States Attorney

SARAH SPEARS
Assistant United States Attorney

ASHLEY ELLIS-DOTSON
Assistant United States Attorney